IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERA WILLIAMS and          :
T'JUANNE WILLIAMS,        :     No. 1:12-cv-1566
    Plaintiffs,             :
                                  :
   v.                        :     (Judge Kane)
                                  :
OFFICER EDWARD RIDER, OFFICER   :
MICHAEL MAURER, OFFICER URIAH   :
AVILES, and STEPHANIE BARTLETT,   :
    Defendants             :
                                  :

## <u>MEMORANDUM</u>

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. (Doc. No. 49.) For the reasons that follow, the Court will grant Defendants' motion in part, and deny it in part.

## I.      BACKGROUND

On August 3, 2011, Plaintiffs Tera Williams ("Tera") and her daughter T'Juanne Williams ("T'Juanne"), observed a large group of young boys from their neighborhood approaching another teenager, and believed the boys were carrying guns, and that they intended to incite the teenager into a fight. (Doc. No. 62 ¶¶ 9-11.) Tera called a City of Harrisburg police officer, Sergeant Thomas Carter, and told him to quickly get police to the scene while a neighbor, Ms. Turner, attempted to prevent the altercation. (Id. ¶¶ 12-14.) Ms. Turner successfully convinced the boys to disperse. (Id. ¶ 15.) After the police arrived, Tera descended her stairs in order to comfort Ms. Turner, who was "visibly upset." (Id. ¶¶ 16-17.) Plaintiffs allege that City of Harrisburg police officer Michael Haflett then grabbed Tera's arm and yelled "[y]ou need to talk to me." (Id. ¶ 18.) Plaintiffs assert that Tera then pulled away from Haflett

1

and said "[g]et off my arm. You don't need to grab my arm to get attention."  (<u>Id.</u> ¶ 19.)  After

Tera took a few more steps, Haflett again grabbed her arm and repeated that she needed to talk to

him, to which Tera replied "I asked you not to touch me."  (<u>Id.</u> ¶¶ 20-21.)

      At this point, Officer Haflett allegedly grabbed Tera and slammed her to the ground.  (<u>Id.</u>

¶¶ 22.)  Then Officer Haflett, along with Defendant police officers Maurer, Rider, Aviles, and

Bartlett, handcuffed Tera and held her down, with one officer's foot on her neck and another

officer's knee in her back, while the others held down her feet and lower torso.  (<u>Id.</u> at ¶ 23.)

Plaintiffs aver that following this use of force, Tera was visibly in pain, limping, bleeding

profusely, and was forced into the backseat of a police car.  (<u>Id.</u> ¶¶ 25-26.)  Plaintiffs also allege

that T'Juanne witnessed the entire altercation.  (<u>Id.</u> ¶ 27.)

      After Tera was handcuffed and placed in the police car, Officer Haflett and Defendant

Maurer drove her to a nearby parking lot.  (<u>Id.</u> ¶¶ 31-32.)  During the drive, Tera repeatedly

complained that the handcuffs were too tight and were hurting her wrists.  (<u>Id.</u> ¶ 33.)  Once at the

parking lot, Officer Haflett took Tera out of the backseat, told her that he hoped there were no

"hard feelings," and apologized for slamming her to the ground.  (<u>Id.</u> ¶ 34.)  Officer Haflett then

removed the handcuffs, and he and Defendant Maurer drove away without offering to transport

Tera to a hospital, or back to her home.  (<u>Id.</u> ¶¶ 35-40.)  After Officer Haflett and Defendant

Maurer left, Plaintiffs allege that Tera began limping, "almost crawling," home before a

neighbor picked her up and drove her to the hospital.  (<u>Id.</u> ¶¶ 41-44.)  Tera allegedly suffered

several injuries as a result of the altercation including a bruised rib cage, a torn ACL, a pinched

nerve, constant back pain and difficulty walking as well as financial injuries caused by her

inability to work.  (<u>Id.</u> ¶¶ 45-50.)

On August 10, 2012, Plaintiffs initiated this action against the City of Harrisburg, Officer Haflett, and four unnamed City of Harrisburg police officers.  (Doc. No. 1.)  On August 5, 2013, Plaintiff filed a new complaint, separately docketed as Civil Action No. 13-2078, naming Defendants Edward Rider, Michael Maurer, Uriah Aviles and Stephanie Bartlett as Defendants and thereby seemingly identifying the previously unnamed City of Harrisburg police officers. (Doc. No. 62.)  That three-count complaint brings the following causes of action: (1) 42 U.S.C. § 1983 claims alleging that Defendants Rider, Maurer, Aviles and Bartlett violated Plaintiff Tera Williams' rights under the Fourth, Eighth, and Fourteenth Amendments, (2) Pennsylvania tort claims on behalf of Plaintiff Tera Williams, and (3) Pennsylvania tort claims for assault and intentional infliction of emotional distress ("IIED") against the Defendants on behalf of Plaintiff T'Juanne Williams arising out of her witnessing the altercation with her mother.  (Id. ¶¶ 51-58.) On September 20, 2013, the Court consolidated the two actions.[1]  (Doc. No. 35.)

On February 3, 2014, Defendants Rider, Maurer, Aviles and Bartlett moved to dismiss the August 5, 2013 complaint.  (Doc. No. 49.)  Specifically, Defendants contend that Plaintiff Tera has not stated any Section 1983 claims against them for excessive force, failure to intervene, or failure to provide medical care.  (Id., Doc. Nos. 50, 52.)  Defendants also argue that Plaintiff T'Juanne does not adequately state claims against them for assault or intentional infliction of emotional distress.  (Id.)  The motion is fully briefed and ripe for disposition.

---

[1]  Prior to consolidating the two actions, the Court issued an order asking Plaintiffs to show cause why the two cases should not be consolidated.  (No. 13-2078, Doc. No. 3.)  The Plaintiffs did not respond to the show cause order, and it was unclear to the Court why Plaintiffs filed a separate action arising out of the same claims.  In their reply brief, Defendants suggest this complaint was brought separately only because the time period for adding additional parties to the first action had expired.  (Doc. No. 52 at 13.)

## II.     LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by recent developments in pleading standards, which commenced with the United States Supreme Court's announcement of the "plausibility" standard in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  See also Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted from simple notice pleading under Conley's "no set of facts" standard[2] to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  Now, to prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a

---

[2]  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

4

complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.    DISCUSSION

First, the Court will address Defendants' argument that Plaintiffs have stated no claims under the Eighth Amendment.  Second, the Court will address Defendants' argument that Plaintiff Tera has not stated an excessive force claim.  Third, the Court will address Defendants' argument that Tera has not stated a failure to intervene claim.  Fourth, the Court will address Defendants' argument that Tera has not stated a denial of medical care claim.  Lastly, the Court will address Defendants' argument that Plaintiff T'Juanne has not stated Pennsylvania state law tort claims for assault and intentional infliction of emotional distress.

### A.    Eighth Amendment claims

Plaintiffs' complaint asserts that Defendants' conduct violated Tera's rights under the Eighth Amendment to the United States Constitution.  Defendants move the Court to dismiss any claims to the extent they allege Eighth Amendment violations, because the Eighth Amendment and its protections do not apply to Tera.  The Court agrees.  The protections afforded by the Eighth Amendment do not apply upon detention by police, but rather begin after sentencing and conviction.  Hubbard v. Taylor, 399 F. 3d 150, 164 (3d Cir. 2005) (quoting Whitley v. Albers, 475 U.S. 312, 318 (1986)).  Indeed, Plaintiffs concede that they do not assert a cognizable claim under the Eighth Amendment.  (Doc. No. 51 at 3.)  Accordingly, the Court will dismiss

5

Plaintiffs' claim that Defendants violated Tera's right to be free from cruel and unusual punishment under the Eighth Amendment.

### B.   Excessive force

#### 1.   Fourteenth Amendment

As an initial matter, Plaintiffs assert that they seek to bring an excessive force claim under both the Fourth and Fourteenth Amendments.  (See Doc. No. 51 at 5.)  Defendants argue that any such claims must be dismissed to the extent they are brought under the Fourteenth Amendment, because Plaintiffs' excessive force allegations instead fall under the protections of the Fourth Amendment.  (Doc. No. 50 at 19-20.)

The Court agrees that Plaintiffs' excessive force allegations do not sound under the protections of the Fourteenth Amendment.  "[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process."  Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)).  Plaintiff Tera's excessive force allegations arise out of her seizure by the Defendant police officers as they handcuffed her and placed her in a police vehicle, and are properly brought under the Fourth Amendment.  See Graham, 490 U.S. at 394 ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures of the person."); Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) ("An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person.").  Accordingly, the Court

6

will dismiss the excessive force claim to the extent Plaintiffs seek to bring it under the

Fourteenth, rather than the Fourth, Amendment.  See Mitchell v. Luckenbill, 680 F. Supp. 2d

672, 685 (M.D. Pa. 2010) (dismissing Fourteenth Amendment excessive force claim).

### 2.    Fourth Amendment

Defendants proffer two primary arguments in moving the Court to dismiss Plaintiffs'

Fourth Amendment excessive force claim.  First, they argue that Plaintiffs have not adequately

alleged the personal involvement of the Defendants in causing Plaintiff Tera's constitutional

harm.  (Doc. No. 50 at 14.)  Second, they argue that the complaint fails to plead sufficient facts

to support a claim of excessive force.  (Id. at 16.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their

persons, houses, papers and effects, against unreasonable searches and seizures, shall not be

violated. . . . "  U.S. Const. Amend. IV.  Under the Fourth Amendment, whether an officer used

excessive force is assessed by the "objective reasonableness" of that officer's conduct.  Graham,

490 U.S. at 388.  This objective reasonableness test "requires careful attention to the facts and

circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  Reasonableness is to

be evaluated from the "perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight."  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir.

2004) (quoting Graham, 490 U.S. at 396).

First, the Court finds Defendants' argument that the complaint fails to plead the personal

involvement of the defendant police officers unavailing.  It is true that there is no vicarious

liability in a Section 1983 action; a defendant must have played an "affirmative part" in the alleged harm.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[A] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.").  However, Plaintiffs' allegations are obviously not based in principles of respondeat superior and clearly set forth that Defendants assisted in the allegedly excessive force directed at Tera.  Specifically, the complaint avers one of the defendant officers stuck a foot on her neck, another officer stuck a knee in her back, while the other officers held down her legs.  (Doc. No. 62 ¶ 23.)  Although the Defendants are correct that the complaint does not aver precisely to which Defendants the foot and neck belonged, a fair reading of the complaint clearly sets forth that all four Defendants played an affirmative role in the allegedly excessive force by either jabbing her or holding her down.  The Court must accept these facts as true, and construe them in a light most favorable to the Plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  In doing so, the Court finds that Plaintiffs' complaint alleges the personal involvement of Defendants.[3]

The Court further finds that, contrary to Defendants' position, the allegations in the complaint adequately plead an excessive force claim.  Plaintiffs aver, as described above, that after Officer Haflett slammed Tera to the ground, the Defendants held her down with one

---

[3] Defendants also argue that a claim cannot be sustained against all Defendants because, as only one foot and one knee are alleged to have been applied by Defendants to Tera's person, at most, "two of the four named Defendants could have been involved."  (Doc. No. 50 at 15.)  Moreover, according to Defendants, the other officers who "simply held down Plaintiff's feet and lower torso quite clearly did not use excessive force, but merely utilized a passive restraint to [sic] while Williams was handcuffed."  (Id.)  On a motion to dismiss, however, the Court must consider only the factual allegations in the complaint, which alleges that each Defendant assisted in applying allegedly excessive force to Tera's person.  Accordingly, the Court cannot at this time determine whether Defendants' role was, as they insist, "passive."

officer's foot on her neck and another officer's knee in her back, while the others held down her feet and lower torso.  (Doc. No. 62 ¶ 23.)  Plaintiffs allege that this caused profuse bleeding and that Tera limped to the police car.  (Id. ¶¶ 25-26.)  Plaintiffs also aver that this altercation resulted in Tera suffering a bruised rib cage, a torn ACL, and a pinched nerve, among other maladies.  (Id. ¶ 45.)  The Court finds Plaintiffs' assertions adequately state an excessive force claim.  See, e.g., Kokinda v. Breiner, 557 F. Supp. 2d 581, 589 (M.D. Pa. 2008) (denying motion to dismiss excessive force claim where the plaintiff alleged that the defendants "violently twist[ed] his arm behind his back, after he had offered no resistance whatsoever . . . [and] continued to restrain Plaintiff on the ground with his knee in Plaintiff's back after Plaintiff cried out 'You just broke my arm.'").

In moving to dismiss the excessive force claim, Defendants essentially ask the Court to conclude that the use of force was reasonable under the circumstances.  Specifically, Defendants state that police officers are expected to use some amount of physical coercion, and that under the circumstances, "Defendants were suddenly confronted by another officer apparently making an arrest, and assisted in that arrest."  (Doc. No. 50 at 16-19.)  Defendants also contend that "driving a knee into [Tera's] back" and "pressing a foot on her neck" cannot "legally support a Fourth Amendment claim."  (Doc. No. 52 at 2-3.)  However, the Court finds adequate factual support in the complaint for Plaintiffs' claim that the force was objectively unreasonable, such as the allegations that Tera suffered a bruised rib cage, a torn ACL, and profuse bleeding as a result of the encounter.  Moreover, applying the Fourth Amendment's objective reasonableness standard requires "careful attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396.  Because the Court finds that Plaintiffs have set forth "sufficient

factual matter" in support of their claim, see Fowler, 578 F.3d at 210, Defendants' arguments

concerning reasonableness are better suited for disposition following discovery and upon

consideration of a full factual record outlining the precise facts and circumstances of the

incident.[4]   Accordingly, the Court will not dismiss Plaintiff Tera's Fourth Amendment excessive

force claim.

### C.      Failure to intervene

Defendants also move to dismiss Plaintiffs' failure to intervene claim.  Defendants argue

that the facts pled in the complaint do not as a matter of law support such a claim.  (See Doc. No.

52 at 4.)  Initially, the Court observes that, as with the excessive force allegations, Defendants'

alleged failure to intervene in the use of force against Plaintiff Tera while she was being detained

falls under the ambit of the Fourth Amendment.  See, e.g., Bryant v. City of Phila., No. 10-3871,

2012 WL 258399 (E.D. Pa. Jan. 27, 2012); Yarnall v. Mendez, 509 F. Supp. 2d 421, 430 (D. Del.

2007) (dismissing Fourteenth Amendment failure to intervene and excessive force claims arising

out of an arrest and finding that such claims "fail as a matter of law").

 "If a police officer, whether supervisory or not, fails or refuses to intervene when a

constitutional violation such as an unprovoked beating takes place in his presence, the officer is

directly liable under Section 1983."  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  This

form of liability requires that (1) the officer had reason to know that a constitutional violation,

such as excessive force, was occurring, and (2) that officer had a reasonable and realistic

---

[4] Defendants also contend that the excessive force alleged in the complaint could not
plausibly have caused Tera's alleged injuries.  (Doc. No. 52 at 2-3.)  Once again, however, the
Court must accept Plaintiffs' allegations as true, and whether Tera actually suffered her alleged
injuries as a result of Defendants' alleged misconduct cannot be determined on a motion to
dismiss.

opportunity to intervene. <u>Bryant v. City of Phila.</u>, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012) (citing <u>Smith</u>, 293 F.3d at 651).

The Court finds Plaintiffs adequately state a claim for failure to intervene.  Plaintiffs allege that all Defendants were present at the scene and indeed assisted in the use of force upon Tera, and the complaint accordingly makes clear that no Defendants attempted to intervene in the use of force.  (<u>See</u> Doc. No. 62 ¶¶ 22-26.)  <u>See</u> <u>Shuey v. Schwab</u>, No. 08-1190, 2010 WL 479938, at *5 (M.D. Pa. Feb. 4, 2010) ("The Plaintiffs allege that the [defendant] officers communicated and worked collectively during the use of force . . . [a]s a result, [plaintiff] sufficiently alleges a failure to intervene against each officer to the extent they observed the other using excessive force.").  Defendants argue that it is apparent from the allegations in the complaint that the force occurred quickly and suddenly, and that there was therefore "no reasonable opportunity for intervention."  (Doc. No. 52 at 5-6.)  The Court agrees that the timeline alleged in the complaint appears fairly brief, but cannot conclude at this stage that there was no reasonable opportunity to intervene.  In determining whether a defendant had a realistic and reasonable opportunity to intervene, "courts consider <u>many</u> factors, including the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault."  <u>Armbruster v. Marguccio</u>, No. 05-344J, 2006 WL 3488969, at *8 (W.D. Pa. Dec. 4, 2006) (emphasis added). The Court thus finds the facts alleged in the complaint "plausibly give rise to an entitlement for relief," <u>see</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010), and that Plaintiffs should be permitted to develop the record as it relates to whether Defendants had a reasonable to intervene.  Accordingly, the Court will not dismiss Plaintiff Tera's failure to intervene claim.

D.      **Denial of medical care**

Defendants also move to dismiss Plaintiff's complaint to the extent it alleges a

Fourteenth Amendment denial of medical care claim.  Defendants argue that this claim fails as a

matter of law because Plaintiff has not alleged facts indicating that any Defendants knew of a

serious risk of harm to Plaintiff.  (Doc. No. 50 at 20.)  Plaintiffs argue that the complaint "makes

it clear that the defendants were aware of the Plaintiff's serious injury and not one of them acted

to provide any level of medical care."  (Doc. No. 51 at 6.)

"The Due Process Clause [of the Fourteenth Amendment] . . . require[s] the responsible

government or governmental agency to provide medical care to persons . . . who have been

injured while being apprehended by the police." City of Revere v. Mass. Gen. Hosp., 463 U.S.

239, 244 (1983).  See Jennings v. Fetterman, 197 F. App'x 162, 165 (3d Cir. 2006) (noting that

denial or delay of medical care can violate the Fourteenth Amendment because "[a]s an arrestee

in the custody of government officials, [plaintiff] was required to be given medical care for his

wounds").  Claims alleging denial of medical care under the due process clause of the Fourteenth

Amendment are analyzed under the "deliberate indifference" standard, which is the same

standard applied to such claims brought by convicted prisoners under the Eighth Amendment.

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); Walmsley v. City

of Phila., 872 F.2d 546, 552-53 (3d Cir. 1989).

Thus, to state a claim for unconstitutional deprivation of medical care under the

Fourteenth Amendment, a plaintiff must allege (1) a serious medical need and (2) acts or

omissions by the police officers that indicate deliberate indifference to that need." Thompson v.

Wynnewood of Lower Merion Twp., No. 12-2308, 2012 WL 4033706, at *8 (E.D. Pa. Sept. 13, 2012)

(citing Natale, 318 F.3d at 582).   An officer is deliberately indifferent when he acts with a

conscious disregard of a substantial risk of serious harm.   Kaucher v. Cnty. of Bucks, 455 F.3d

418, 427-28 (3d Cir. 2006).

Deliberate indifference may lie in situations where there was "objective evidence that [a]

plaintiff had serious need for medical care," and [defendants] ignored that evidence.   Nykiel v.

Borough of Sharpsburg, 778 F. Supp. 2d 573, 584 (W.D. Pa. 2011) (citing Nicini v. Morra, 212

F.3d 798, 815 n. 14 (3d Cir. 2000)).   A medical condition or need is "serious," if it is "... one that

is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

Monmouth Cnty. Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The Court finds Plaintiffs have stated a claim that Defendants were deliberately

indifferent to Tera's serious need for medical care.   Plaintiffs allege that as a result of the use of

force by Defendants, Tera was "visibly in pain, limping and bleeding profusely" and that the

Defendants "lifted the limping and bleeding [Tera] into the backseat of Officer Haflett's patrol

car." (Doc. No. 62 ¶¶ 25-26.)  Despite this, none of the Defendants are alleged to have taken any

steps to help Tera receive medical care.   Indeed, the complaint sets forth that after the alleged

force, Defendant Maurer specifically assisted in transporting Tera to a parking lot, where he and

Haflett dropped her off without offering to transport her either back home or to a hospital.   (Id.

¶¶ 31-40.) Tera alleges that as a result of being left in the parking lot she "limped back [home],

almost crawling" until a neighbor spotted her.   (Id. ¶¶ 41-42.)   Tera was then driven to the

hospital, with injuries including a torn ACL.   (Id. ¶¶ 43-45.)

Defendants concede that the complaint alleges the existence of a serious medical need,

but argue that the complaint does not allege that Defendants knew Tera faced a risk of

13

substantial harm and displayed deliberate indifference in the face of such knowledge.  (Doc. No.

50 at 22-24.)  However, the Court finds that Plaintiffs' allegations that Tera was limping and

"profusely bleeding" suggest there was objective evidence that Defendants should have known

she had a serious need for medical treatment, and therefore responded with deliberate

indifference in failing to assist her.  See Hill v. Algor, 85 F. Supp. 2d 391, 410 (D.N.J. 2000)

(denying summary judgment on medical need claim where [Plaintiff] had "a gash on his head,

[and] blood on his head, hands, and clothing . . . [w]ere the jury to believe [the] account of

[plaintiff's]  injuries, they could conclude that [plaintiff's] gash to the head is the type of injury

that a lay person easily would recognize as requiring medical treatment").  Accordingly, the

Court will not dismiss Plaintiffs' denial of medical care claim.

      **E.**        **State law claims of Plaintiff T'Juanne**

      Defendants also move to dismiss the claims of assault and intentional infliction of

emotional distress ("IIED") arising out of Plaintiff T'Juanne witnessing the alleged use of force

upon her mother, Tera, by Defendants.

        **1.**        **Assault**

      Defendants argue that the assault claim brought by Plaintiff T'Juanne must be dismissed

because there are "no allegations demonstrating any intention to do [T'Juanne] injury for the

purposes of assault.  (Doc. No. 50 at 26.)  Plaintiffs do not respond with any arguments regarding

the assault claim, and the Court presumes they do not oppose this aspect of Defendants' motion.

To state a claim under Pennsylvania law for assault, a plaintiff "must show that a particular

Defendant intentionally caused an imminent apprehension of a harmful or offensive bodily

contact in Plaintiff."  Lakits v. York, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003) (citing Sides v.

Cleland, 648 A.2d 793, 796 (1994) (citations omitted)).   Stated another way, "[a]ssault is an intentional attempt by force to do an injury to the person of another."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  Plaintiffs allege that T'Juanne watched Defendants injure her mother Tera, but do not allege that T'Juanne herself suffered an imminent apprehension of a harmful bodily contact.  Moreover, Plaintiffs do not allege that any of the Defendants were even aware T'Juanne was at the scene, or that there was any intentional attempt to injure her. Accordingly, the Court will dismiss the assault claim brought by Plaintiff T'Juanne.

2.     **IIED**

Defendants argue that Plaintiff T'Juanne's IIED claim should be dismissed because the allegations in the complaint are not sufficiently outrageous and do not allege that T'Juanne suffered physical harm as a result of Defendants' actions, which is required under Pennsylvania law.  (Doc. No. 50 at 25-26.)  Plaintiffs argue that they have alleged sufficiently outrageous behavior, and although they acknowledge that they have not pled that T'Juanne suffered any physical harm, they state that they can amend the complaint to reflect T'Juanne's physical harm. (Doc. No. 51 at 6-7.)

An IIED claim requires the following elements: (1) the conduct must be extreme and outrageous, (2) the conduct must be intentional or reckless, (3) the conduct must cause emotional distress, and (4) the emotional distress must be severe.  Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997).  A plaintiff must also allege physical manifestations of the distress.  See Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004) (("[A] plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.").  It is for the court to determine, in the first instance, whether the actor's conduct can reasonably

15

be regarded as so extreme and outrageous as to permit recovery.  Reimer v. Tien, 356 514 A.2d

566, 569 (1986).

Because the Court finds that the complaint adequately alleges Plaintiffs' Section 1983

claims, the Court disagrees with Defendants' assertion that the allegations in the complaint are

insufficiently outrageous.  Nevertheless, Plaintiff T'Juanne has failed to state an IIED claim.  As

they acknowledge in their brief in opposition, Plaintiffs do not allege in the complaint any

physical harm to T'Juanne resulting from her emotional distress.[5]  See Simmons v. Pacor, Inc.,

674 A.2d 232, 238 (Pa. 1996) ("It is the general rule of this Commonwealth that there can be no

recovery for damages for injuries resulting from fright or nervous shock or mental or emotional

disturbances or distress mental or emotional distress unless they are accompanied by physical

injury or physical impact.").  Accordingly, the Court will dismiss Plaintiff T'Juanne's IIED

claim.

    **F.     Leave to amend**

Lastly, Plaintiffs request leave to amend their complaint should the Court dismiss any of

their claims. (Doc. No. 51 at 7.)  Defendants oppose this request.  (Doc. No. 15 at 11-14.)  "[T]he

grant or denial of an opportunity to amend is within the discretion of the District Court."

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  A court need not grant

leave to amend where amendment would be inequitable or futile.  Id.  Leave to amend may be

_____

[5] Plaintiffs draw the Court's attention to some alleged physical manifestations of the
distress in the brief in opposition (Doc. No. 51 at 7), but "it is axiomatic that the complaint may
not be amended by the briefs in opposition to a motion to dismiss."  Reed v. Chambersburg Area
Sch. Dist., 951 F. Supp. 2d 706, 720 (M.D. Pa. 2013) (quoting Car Carriers, Inc. v. Ford Motor
Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).

denied for undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. <u>Waterfront Renaissance Assocs. v. City of Phila.</u>, 701 F. Supp. 2d 633, 640 (E.D. Pa. 2010) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

The Court will deny Plaintiffs further leave to amend. This is now the third distinct time the Court has addressed a motion to dismiss in this matter, and thus the Court finds that Plaintiffs have had ample opportunity to state their claims. Additionally, the initial complaint in this matter was filed almost two years ago and the Court finds it would be inequitable to continue to deny the defense certainty regarding the claims they need to defend going forward.[6] Accordingly, the Court will deny Plaintiffs leave to amend.

## IV. CONCLUSION

The Court will dismiss with prejudice Plaintiff Tera's claims under the Eighth Amendment. The Court will also dismiss with prejudice Plaintiff Tera's Fourteenth Amendment excessive force claim. The Court will not dismiss Plaintiff Tera's Fourth Amendment excessive force and failure to intervene claims, and will not dismiss her Fourteenth Amendment denial of medical care claim. Lastly, the Court will dismiss with prejudice Plaintiff T'Juanne's Pennsylvania state law tort claims for assault and IIED. An order consistent with this memorandum follows.

---

[6] The Court also agrees with Defendants that the record in this case reflects dilatory conduct on the part of Plaintiffs, who have generally failed to pursue this litigation in a timely manner. (<u>See</u> Doc. No. 52 at 13.)